# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES KEITHER McELFRESH, | CV F   06-1575 SMS HC |
| Petitioner, | ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS; DIRECTING CLERK OF COURT TO ENTER JUDGMENT; AND DECLINING TO ISSUE CERTIFICATE OF APPEALABILITY |
| v. | |
| JOHN MARSHALL, WARDEN, | |
| Respondent. | [Doc. 1] |
| _____/ | |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Pursuant to 28 U.S.C. § 636(c)(1), the parties have consented to the jurisdiction of the United States Magistrate Judge.

## BACKGROUND

Following jury trial in the Merced County Superior Court, Petitioner was convicted of causing injury while driving under the influence of alcohol or drugs (Cal. Vehicle Code § 23153(a)) and causing injury while driving with a blood alcohol limit exceeding .08 percent (Cal. Vehicle Code § 23153(b)).  Additionally, the jury found the great bodily injury enhancement (Cal. Penal Code[1] § 12022.7(a)) allegation to be true as to both counts.  In a subsequent court trial, the court found the two prior strike allegations as to each count true (§ 1170(c)(2)(A)), yet ordered stricken one of the prior convictions pursuant to Romero.[2]  Petitioner was sentenced to

---

[1]  All further statutory references are to the California Penal Code unless otherwise indicated.

[2]  People v. Superior Court (Romero), 13 Cal.4th 497 (1996).

1

1   seven years in state prison computed as follows: count 1 - the mid term of two years, doubled to

2   four years as a second strike sentence, plus three years for the great bodily injury enhancement;

3   count 2 - the mid term of four years, to run concurrently, yet stayed pursuant to section 654.

4   (Exhibit 1.)

5       Petitioner filed a timely notice of appeal with the California Court of Appeal, Fifth

6   Appellate District.  On March 3, 2006, the Court of Appeal affirmed Petitioner's conviction and

7   sentence.  (Exhibit 5.)

8       On April 10, 2006, Petitioner filed a petition for review with the California Supreme

9   Court, which was denied on May 17, 2006.  (Exhibits 6, 7.)

10      Petitioner filed the instant petition for writ of habeas corpus on November 6, 2006.

11  Respondent filed an answer to the petition on February 23, 2007, and Petitioner filed a traverse

12  on March 8, 2007.  (Court Docs. 11, 14.)

13                          STATEMENT OF FACTS[3]

14          On April 7, 2001, sometime after 6 p.m., Clinton Wenter, an off-duty
        police sergeant, was driving south on Interstate 5.  The weather was sunny, warm,
15      and windy.  Wenter was traveling at 75 miles per hour in the "number two" or
        slow lane.  The speed limit was 70 miles per hour.
16          As he was driving, Wenter's attention was caught by "a flash of color" in
        his rearview mirror.  He looked into the rearview mirror and saw a small car,
17      about three-tenths of a mile behind him, approaching rapidly.  A larger male with
        brown hair was behind the wheel and a smaller person with longer hair, silver or
18      white, was in the passenger seat.
            The two people in the car "seemed to be playing."  They were "laughing,
19      kind of hitting each other."  Wenter made a specific mental note of their behavior
        because they reminded him of the movie "Dumb and Dumber."  He even said this
20      out loud at the time.  Wenter observed the people again as their car passed him in
        the "number one" or fast lane.  He identified the car as white Geo Metro with
21      Oregon or Washington plates.  Wenter estimated the Geo was traveling around 90
        to 95 miles per hour.
22          Shortly after the car passed and was about two to three-tenths of a mile
        ahead of him, Wenter observed the Geo suddenly dart to the left into the center
23      median, and then overcorrect back into the roadway.  A truck, which was traveling
        in the path of the Geo, slammed on its brakes.  The Geo also hit its brakes hard
24      and was throwing off smoke.  The Geo disappeared briefly from sight.  After the
        truck moved out to the number 1 lane, Wenter could see the Geo again, "going
25      end over end," causing a lot of dirt to fly around, before coming to rest.

26  _____

27      [3] The following summary of facts are taken from the opinion of the California Court of Appeal, Fifth
    Appellate District appearing as Exhibit 5, of the Answer to the Petition for Writ of Habeas Corpus.  The Court finds
28  the state Court of Appeal's summary is a correct and fair summary of the facts of the case.

Wenter immediately stopped and threw on his flashers.  He then ran over to the Geo.  He found both of the car's occupants lying on the ground outside the car.  The larger male was lying on the driver's side, partially on the pavement and partially on the dirt.  He was incoherent and his eyes were rolling around.  A smaller male with white hair was lying on the other side of the car.  Although Wenter could see no obvious injuries, the smaller man did "not look good."  Wenter told the man not to move and that he was going to get help.  The man did not respond.

In the meantime, California Highway Patrol Officer Steven Schnuck and other emergency personnel arrived.  Wenter told Schnuck that the driver of the Geo was the larger male with brown hair.  Wenter was certain that the brown-haired man was the driver.  Based on his experience and training as a police officer, Wenter opined that the driver was not driving safely and was engaging in reckless driving by driving at such a high speed.  However, Wenter did not see whether the two men were still engaged in horseplay at the time of the accident.

Officer Schnuck was notified of the accident at 6:36 p.m. and arrived at the scene around 6:48 p.m.  Defendant was lying on the ground about 20 feet north of the vehicle.  The other man, Stuart Woods, was lying about three to four feet south of the vehicle, near the passenger door.  Although both men had facial hair and long hair, Woods had longer hair and a longer, fuller beard in comparison with defendant.  Woods had a bulge in his thigh area which led Schnuck to believe he had a broken femur.

Schnuck detected a strong odor of alcohol coming from defendant, and noticed defendant's eyes were watery and bloodshot.  Woods appeared intoxicated.  The officer placed defendant under arrest for driving under the influence.

The two men were in and out of consciousness.  Due to their injuries, they were flown to different hospitals.  Schnuck arranged to have a blood sample taken from defendant to determine his blood alcohol level.  The parties stipulated that defendant's blood sample was properly drawn at 8:10 p.m., that there was a proper chain of evidence, the blood sample was analyzed by the Department of Justice, and it was determined that defendant had a blood alcohol level of .14.

Based on his observation of the accident scene, Schnuck opined that the driver made an unsafe turning movement in violation of Vehicle Code section 22107, causing the vehicle to drift to the left.  The vehicle then suddenly veered back to the right, traveling across the southbound lanes, before it left the roadway and began to overturn.  The Geo came to rest about 30 feet from the location on the dirt shoulder where it started overturning.  Schnuck further opined the accident was caused by the driver's unsafe turning movement and intoxication.

*The Defense*

Stuart Woods and defendant were good friends and had known each other six to seven years.  At the time of the accident, they were driving from Seattle, Washington, to Woods' mother's house in Hemet, California.  They were driving Woods' car.  The two were "constantly trading off" driving so they could save time and not have to stop overnight at a motel.

The driver's license issued to Woods in 1996 showed "roughly" how he looked at the time of the accident.  Woods acknowledged that at the time of the accident his hair was longer than it was in the photograph and it had also started turning white.

Woods could not remember the accident or who was driving at the time.  As a result of the accident, he suffered a broken femur and pelvis and all his ribs were broken.  He was hospitalized for about five weeks and was unconscious for three of them.

3

1    Nor did Woods specifically remember speaking with defense investigator
     Mario Anaya or telling Anaya that he was driving at the time of the accident.
2    Woods did remember speaking with defense investigator Kelly Gilbert, whom he
     told his recollection about the accident was vague.
3        On January 8, 2004, Anaya spoke with Woods about the accident by
     telephone.  During the conversation, Woods told Anaya that, to the best of his
4    recollection, he (Woods) was driving the car at the time of the accident.
         On March 29, 2004, defense investigator Kelly Gilbert telephoned Woods
5    in Seattle.  Gilbert asked Woods about the accident and who was driving at the
     time.  Woods told her that he did not remember who was driving.  He said it was
6    possible he was driving and it was possible he was not driving.

7    (Exhibit 2, at 2-5.)

8                                    DISCUSSION

9    A.    Jurisdiction

10       Relief by way of a petition for writ of habeas corpus extends to a person in custody

11   pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws

12   or treaties of the United States.  28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3);  Williams v. Taylor,

13   529 U.S. 362, 375, 120 S.Ct. 1495, 1504, n.7 (2000).  Petitioner asserts that he suffered

14   violations of his rights as guaranteed by the U.S. Constitution.  The challenged conviction arises

15   out of the Merced County Superior Court, which is located within the jurisdiction of this Court.

16   28 U.S.C. § 2254(a); 2241(d).

17       On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act

18   of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its

19   enactment.  Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059, 2063 (1997;  Jeffries v. Wood, 114

20   F.3d 1484, 1499 (9th Cir. 1997), cert. denied, 522 U.S. 1008, 118 S.Ct. 586 (1997) (quoting

21   Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir.1996), cert. denied, 520 U.S. 1107, 117 S.Ct.

22   1114 (1997), overruled on other grounds by Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059

23   (1997) (holding AEDPA only applicable to cases filed after statute's enactment).  The instant

24   petition was filed after the enactment of the AEDPA and is therefore governed by its provisions.

25   B.    Standard of Review

26       This Court may entertain a petition for writ of habeas corpus "in behalf of a person in

27   custody pursuant to the judgment of a State court only on the ground that he is in custody in

28   violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).

                                          4

1    The AEDPA altered the standard of review that a federal habeas court must apply with

2 respect to a state prisoner's claim that was adjudicated on the merits in state court. <u>Williams v.</u>

3 <u>Taylor</u>, 120 S.Ct. 1495, 1518-23 (2000).  Under the AEDPA, an application for habeas corpus

4 will not be granted unless the adjudication of the claim "resulted in a decision that was contrary

5 to, or involved an unreasonable application of, clearly established Federal law, as determined by

6 the Supreme Court of the United States;" or "resulted in a decision that was based on an

7 unreasonable determination of the facts in light of the evidence presented in the State Court

8 proceeding." 28 U.S.C. § 2254(d); <u>Lockyer v. Andrade</u>,123 S.Ct.1166 (2003) (disapproving of

9 the Ninth Circuit's approach in <u>Van Tran v. Lindsey</u>, 212 F.3d 1143 (9th Cir. 2000)); <u>Williams v.</u>

10 <u>Taylor</u>, 120 S.Ct. 1495, 1523 (2000).  "A federal habeas court may not issue the writ simply

11 because that court concludes in its independent judgment that the relevant state-court decision

12 applied clearly established federal law erroneously or incorrectly." <u>Lockyer</u>, at 1175 (citations

13 omitted).  "Rather, that application must be objectively unreasonable." <u>Id.</u> (citations omitted).

14    While habeas corpus relief is an important instrument to assure that individuals are

15 constitutionally protected, <u>Barefoot v. Estelle</u>, 463 U.S. 880, 887, 103 S.Ct. 3383, 3391-3392

16 (1983); <u>Harris v. Nelson</u>, 394 U.S. 286, 290, 89 S.Ct. 1082, 1086 (1969), direct review of a

17 criminal conviction is the primary method for a petitioner to challenge that conviction.  <u>Brecht v.</u>

18 <u>Abrahamson</u>, 507 U.S. 619, 633, 113 S.Ct. 1710, 1719 (1993).  In addition, the state court's

19 factual determinations must be presumed correct, and the federal court must accept all factual

20 findings made by the state court unless the petitioner can rebut "the presumption of correctness

21 by clear and convincing evidence."  28 U.S.C. § 2254(e)(1); <u>Purkett v. Elem</u>, 514 U.S. 765, 115

22 S.Ct. 1769 (1995); <u>Thompson v. Keohane</u>, 516 U.S. 99, 116 S.Ct. 457 (1995); <u>Langford v. Day</u>,

23 110 F.3d 1380, 1388 (9th Cir. 1997).

24 C.    <u>Great Bodily Injury Enhancement/Instructional Error</u>

25    Petitioner contends that the great bodily injury enhancement imposed for the injuries

26 sustained by his passenger should be stricken because his passenger was an accomplice, and the

27 trial court erred by failing to give an accomplice instruction, pursuant to CALJIC 3.01 and 3.02.

28    This claim was presented to the California Supreme Court in the petition for review filed

5

on April 10, 2006, and was summarily denied on May 17, 2006.  (Exhibits 6, 7.)  The California

Court of Appeal denied the claim on the merits in the last reasoned state court opinion.  (Exhibit

5.)

A challenge to a jury instruction solely as an error under state law does not state a claim

cognizable in a federal habeas corpus action.  See Estelle v. McGuire, 502 U.S. 62, 71-72 (1991).

The state court's failure to give a jury instruction does not rise to the level of a constitutional

violation unless the failure so infected the trial and deprived the defendant of the fair trial

guaranteed by the Due Process Clause of the Fourteenth Amendment.  See Dunckhurst v. Deeds,

859 F.2d 110, 114 (9th Cir. 1988).  In determining whether the omission of an instruction has any

constitutional significance it must be reviewed in light of the evidence in the case.  See Duckett

v. Godinez, 67 F.3d 734, 745 (9th Cir. 1995); see also Henderson v. Kibbe, 431 U.S. 145, 156

(1977).

In a well-reasoned opinion, the Court of Appeal held, in pertinent part, as follows:

> The defendant has the burden of proving the witness's status as an
> accomplice by a preponderance of the evidence.  (*People v. Fauber*, *supra*, 2
> Cal.4th at p. 834; *People v. DeJesus*, *supra*, 38 Cal.App.4th at p.23.)  A witness's
> status as an accomplice is a question for the jury where the facts are in dispute.
> (*People v. Howard* (1992) 1 Cal.4th 1132, 1174; *People v. Verlinde* (2002) 100
> Cal.App.4th 1146, 1158 (*Verlinde*).  However, when the facts are not in dispute,
> the issue is a legal one to be determined by the trial court.  (*People v. Daniels*,
> *supra*, 52 Cal.3d at p.867; *Verlinde*, *supra*, at p. 1159.)  "'Where such witness is
> an accomplice as a matter of law, the court should so charge . . . . Conversely,
> where, as a matter of law, the witness is not an accomplice, the court does not err
> in refusing to charge that he is or in refusing to submit the issue to the jury.'"
> (*People v. Hoover* (1974) 12 Cal.3d 875, 880, quoting *People v. Jones* (1964) 228
> Cal.App.2d 74, 94-95; *see also Verlinde, supra*, at p. 1159.)
>
> "Ordinarily, accomplice liability under a coperpetrator theory or an aider
> and abettor theory is not associated with the crime[] of . . . felony drunk driving
> because of the individual nature of the act and mental state involved." (*Verlinde*,
> *supra*, 100 Cal.APp.4th at p. 1160.)  Notwithstanding defendant's assertions to
> the contrary, we find nothing in the present case distinguishing it from the
> ordinary drunk driving case where accomplice liability is simply not at issue.  The
> prosecution claimed that defendant personally committed the offenses, and the
> defense denied it, claiming the eyewitness was mistaken in his identification of
> defendant and that Woods was actually the driver.  Neither side claimed or
> presented any evidence suggesting that both men were driving the car at the same
> time, which would support accomplice liability under a coperpetrator theory.
> (*See, e.g.*, *Verlinde*, *supra*, at pp. 1155, 1160 [intoxicated witness controlled the
> steering wheel while intoxicated defendant operated the pedals].)
>
> Nor was any evidence presented to demonstrate that Woods intentionally

6

1    encouraged defendant to drive under the influence or gave him control of the car
     knowing he was under the influence, which would support accomplice liability
2    under an aider and abettor theory.  (*See, e.g. Verlinde*, *supra*, 100 Cal.App.4th at
     pp. 1155, 1162 [intoxicated witness who had shared driving with intoxicated
3    defendant relinquished control of steering wheel to defendant and fell asleep
     before fatal accident].)  "To establish criminal liability on an aiding and abetting
4    theory, the defendant must have 'act[ed] with knowledge of the criminal purpose
     of the perpetrator and with an intent or purpose either of committing, or of
5    encouraging or facilitating commission of, the offense.'" (*Verlinde*, *supr*a, 100
     Cal.App.4th at p. 1161, citing *People v. Beeman* (1984) 35 Cal.3d 547, 560.)

6
7        Although Woods had a vague recollection of trading off driving
     responsibilities with defendant during the trip, and the evidence suggested both
8    were intoxicated at the time of the accident, unlike *Verlinde*, there was no
     evidence Woods handed over the steering wheel to defendant knowing he was
9    under the influence.  The record is devoid of evidence concerning the
     circumstances of their consumption of alcohol or how they decided who would
10   drive near the time of the accident or whether they were already intoxicated when
     they made that decision.  Moreover, defendant has cited no authority for his novel
11   suggestion that Woods qualified for accomplice status because it was only chance
     or luck that prevented him from being the driver of the car when the accident
12   occurred ("It was a toss of the dice as to which one drove on the occasion of the
     accident").  The mere chance that he could just have easily been driving as
13   defendant when the accident occurred does not establish the requisite knowledge
     and intent for accomplice liability.

14       In short, there was no evidence from which the jury could have reasonably
     concluded Woods was an accomplice under either a coperpetrator theory or aiding
15   and abetting theory.  Accordingly, the court was under no obligation to give
     accomplice instructions and we find no basis for striking the enhancement
16   imposed under section 12022.7 for the injuries inflicted on Woods.  For the same
     reason, we also reject defendant's related contention that his counsel rendered
17   ineffective assistance of counsel by failing to request accomplice instructions.
     Moreover, because Woods testified for the defense, the standard accomplice
18   instructions, which would have told the jury to view his testimony with care and
     caution, could have been prejudicial to the defense.  (§ 1111; CALJIC No. 3.18;
19   *see People v. Melone* (1945) 71 Cal.App.2d 291, 297-298 ["To give without
     request, such an instruction when the accomplice witness is called by the defense
20   may prejudice the constitutional rights of the witness by unnecessarily and
     inadvisedly commenting on the evidence and discrediting the witness."].)  In light
21   of how the case was argued and tried, it is not surprising that neither the parties
     nor the court considered accomplice instructions pertinent.

22
     (Exhibit 5, at 6-9.)
23
         Under California law, an accomplice is defined as "one who is liable to prosecution for
24
     the identical offense charged against the defendant on trial in the cause in which the testimony of
25
     the accomplice is given."  § 1111.  To be held liable for an identical offense, the witness must be
26
     a principal under section 31.  People v. Horton, 11 Cal.4th 1068, 1113 (1995).  A principle is
27
     defined as one who has advised and encouraged the commission of a crime.  § 31; People v.
28

                                             7

1  Horton, 11 Cal.4th at 1113-1114; People v. Fauber, 2 Cal.4th 792, 833-834 (1992).  The person

2  need not directly commit the act constituting the offense and need not even be present to be held

3  liable under § 31.  An accomplice must have a guilty knowledge and intent with regard to the

4  commission of the crime.  People v. Daniels, 52 Cal.3d 815, 866-867 (1991); People v. DeJesus,

5  38 Cal.App.4th 1, 23 (1995).  Thus, the witness must act "'with knowledge of the criminal

6  purpose of the perpetrator and with an intent or purpose either of committing, or of encouraging

7  or facilitating commission of, the offense.'" People v. Stankewitz, 51 Cal.3d 72, 90-91 (1990);

8  People v. DeJesus, 38 Cal.App.4th at 23.      The state court of appeals properly based its

9  decision that an accomplice instruction was not warranted on California law and the factual

10  determinations presented at the trial court.  On collateral review, the state courts findings of fact

11  must be presumed correct, and can only be overcome by the presentation of clear and convincing

12  evidence that the state court's findings were erroneous.  28 U.S.C. § 2254(e)(1).  Specifically, a

13  state court finding that the facts are insufficient to justify an aider and abetting instruction is

14  entitled to a presumption of correctness.  Mitzel v. Tate, 267 F.3d 524, 536 (6th Cir. 2001); see

15  also Menendez v. Terhune, 422 F.3d 1012, 1029 (9th Cir. 2005) (state court's finding of

16  insufficient evidence of imminent peril to warrant an instruction on imperfect self-defense is

17  entitled to a presumption of correctness).

18      As stated by the Court of Appeal, there is simply no evidence in the record to demonstrate

19  that both Petitioner and Mr. Woods were driving at the time of the collision, nor is there any

20  evidence to suggest that Mr. Woods gave over the driving duties with knowledge that Petitioner

21  was intoxicated.  At best the evidence produced at trial raised doubt, which the jury obviously

22  rejected, as to whether Petitioner was driving the vehicle at the time of the collision.  In fact, this

23  was precisely the defense presented at trial.  (See RT 143 [issue is who was driving at time of

24  collision].)  No evidence supports the finding that, if Petitioner was driving, Mr. Woods was an

25  accomplice and/or aider and abetter.  Although Petitioner contends that Woods interfered and

26  impeded his ability to drive, this is insufficient to support a finding that Woods was an

27  accomplice and/or aider and abetter under California law.  There was no evidence that Woods

28  encouraged Petitioner to drive under the influence or gave him control of the car knowing he was

1   under the influence; consequently, there was no showing that Woods had the requisite knowledge

2   and intent for accomplice liability.  See People v. Verlinde, 100 Cal.App.4th at 1161.  Moreover,

3   as pointed out by the Court of Appeal, because Woods testified on behalf of Petitioner, an

4   instruction that his testimony should be viewed with caution could have damaged Petitioner's

5   defense.  As stated by the Court of Appeal, the circumstances of this case amount to nothing

6   more than the ordinary drunk driving offense involving individual culpability, and the trial court

7   did not err by failing to give an accomplice liability instruction or striking the great bodily injury

8   enhancement.

9       D.    Trial Court's Failure to Strike Both Prior Convictions

10          Petitioner contends that California does not regularly and consistently apply the same

11   discretion under Romero motions in violation of his equal protection rights.  (Petition, at 5-6.)

12          Respondent argues that this claim is unexhausted and alternatively fails to state a federal

13   question.  The Court agrees.

14          In the petition for review filed with the California Supreme Court, Petitioner argued that

15   the trial court abused its discretion in refusing to strike both of Petitioner's prior strike offenses

16   for attempted murder pursuant to a Romero motion.  Petitioner urged that the strikes were remote

17   in time and his criminal record was otherwise minimal in nature.  (See Exhibit 6, at 24-30.)  In

18   the instant federal petition, Petitioner raises a related but substantively different claim.  Petitioner

19   contends the following:

20          California does NOT regularly and consistently apply a same [sic]
            discretion under Romero (Motions), petitioner-defendant was denied equal
21          protection under the law.  Petitioner's prior(s) were in fact 1 case, but totally
            unrelated to his instance offense [sic]; in such circumstances, et alia, have been
22          (under Romero) stricken, even murder vs. current drug offense.  California cannot
            prove otherwise.  Petitioner requests an Evidentiary Hearing, with appointment of
23          counsel, and Discovery (to set precedent under Romero) so et al be treated
            equally.  Petitioners prior(s) should be stricken or reversed.
24

25   (Petition at 5-6.)  As Respondent correctly submits, the instant claim is distinct from the claim

26   raised before the California Supreme Court.  To the California Supreme Court Petitioner merely

27   argued that the trial court abused its discretion, yet the instant federal claim alleges an equal

28   protection violation based on the California courts' alleged failure to "regularly and consistently

1    apply" its discretion under Romero. (Petition, at 5.) Thus, the instant equal protection claim is

2    substantively distinct from the mere claim that the trial court abused its discretion. As such, the

3    equal protection claim raised in the instant petition is unexhausted as it was not presented to the

4    California Supreme Court for review.

5         Nonetheless, irrespective of Petitioner's failure to exhaust this claim, the claim fails on

6    the merits and must be denied. See 28 U.S.C. § 2254(b)(2) ("[a]n application for a writ of habeas

7    corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the

8    remedies available in the courts of the State"); Cassett v. Stewart, 406 F.3d, 614, 624 (9th Cir.

9    2005) (a federal court considering a habeas petition may deny an unexhausted claim on the merits

10   when it is perfectly clear that the claim is not "colorable").

11        Habeas corpus relief is not available to correct alleged errors in the state court's

12   application or interpretation of state law. Estelle v. McGuire, 502 U.S. 62, 67-68, 112 S.Ct. 475,

13   480 (1991); Middleton v. Cupp, 768 F.2d 1083, 1084-85 (9th Cir.1985). A petition alleging only

14   a violation of state law is subject to dismissal for failure to state a claim. See Howell v.

15   Mississippi, 543 U.S. 440 (2005). A state law claim merely rephrased by simply citing a due

16   process violation, likewise does not state a claim. See Poland v. Stewart, 169 F.3d 573, 584 (9th

17   Cir. 1999). Although Petitioner attempts to phrase his claim as a federal constitutional challenge,

18   it is nonetheless a claim of error involving application of state law. An equal protection claim

19   cannot be based on the theory that the state court misapplied state law differently from other

20   similarly situated defendants. Little v. Crawford, 449 F.3d 1075, 1081-1083 (9th Cir. 2006). As

21   stated in Little:

22        Little's claim, at most, amounts to an allegation that in his case Nevada
          law was misapplied or that the Nevada Supreme Court departed from its earlier
23        decisions. Under clearly established Supreme Court law, such contention neither
          gives rise to an equal protection claim, nor provides a basis for habeas relief. []
24        See Beck v. Washington, 369 U.S. 541, 554-555 [] (1962); see also Estelle v.
          McGuire, 502 U.S. 62, 67-68 [] (1991) ("We have stated many times that federal
25        habeas corpus relief does not lie for errors of state law. Today, we reemphasize
          that it is not the province of a federal habeas corpus court to reexamine state-court
26        determinations on state-law questions."

27   Little v. Crawford, 449 F.3d at 1082, footnote omitted. Like Little, Petitioner argues that the trial

28   court's failure to strike both of his prior convictions pursuant to California law violated his equal

1  protection rights.  To the contrary, because equal protection of the law does not ensure uniformity

2  of judicial decisions, Petitioner's claim fails.  Little v. Crawford, 449 F.3d at 1082.  Nor has

3  Petitioner demonstrated that the trial court's alleged error resulted in "a fundamental defect

4  which inherently result[ed] in a complete miscarriage of justice," or "exceptional circumstances

5  where the need for the remedy afforded by the writ of habeas corpus is apparent."  Id. at 1083.

6  (citation omitted.)

7  E.    Petitioner's Request for Evidentiary Hearing, Appointment of Counsel and Discovery

8         In support of his equal protection claim, Petitioner requests an evidentiary hearing,

9  appointment of counsel, and discovery.  (Petition, at 6.)

10        1.    Evidentiary Hearing

11  28 U.S.C. section 2254 states:

12            (e)(1) In a proceeding instituted by an application for a writ of habeas
      corpus by a person in custody pursuant to the judgment of a State court, a
13    determination of a factual issue made by a State court shall be presumed to be
      correct.  The applicant shall have the burden of rebutting the presumption of
14    correctness by clear and convincing evidence.
             (2) If the applicant has failed to develop the factual basis of a claim in
15    State court proceedings, the court shall not hold an evidentiary hearing on the
      claims unless the applicant shows that -
16            (A) the claim relies on -
                     (I) a new rule of constitutional law, made retroactive to cases on
17            collateral review by the Supreme Court, that was previously
              unavailable; or
18                   (ii) a factual predicate that could have been previously discovered
                     through the exercise of due diligence; and
19            (B) the facts underlying the claim would be sufficient to establish by clear
      and convincing evidence that but for constitutional error, no reasonable factfinder
20    would have found the applicant guilty of the underlying offense.

21        As Respondent correctly argues, Petitioner has failed to develop these facts in the state

22  courts and in fact has never presented the underlying allegations to the state courts for review.  In

23  addition, Petitioner has not demonstrated that his claim satisfies either (e)(2)(A) or (B), and

24  Petitioner's request for an evidentiary hearing is simply unfounded.

25        2.    Appointment of Counsel

26        There currently exists no absolute right to appointment of counsel in habeas proceedings.

27  See e.g., Anderson v. Heinze, 258 F.2d 479, 481 (9th Cir.), cert. denied, 358 U.S. 889 (1958);

28

1  Mitchell v. Wyrick, 727 F.2d 773 (8th Cir.), cert. denied, 469 U.S. 823 (1984).  However, Title 18

2  U.S.C. § 3006A authorizes the appointment of counsel at any stage of the case "if the interests of

3  justice so require."  See Rule 8(c), Rules Governing Section 2254 Cases.  In the present case, the

4  court does not find that the interests of justice would be served by the appointment of counsel.  In

5  addition, as Petitioner has failed to meet his burden with regard to an evidentiary hearing, the

6  appointment of counsel is not necessary.  Id.

7           3.     Request for Discovery

8           Although discovery is available pursuant to Rule 6, it is only granted at the Court's

9  discretion, and upon a showing of good cause.  Bracy v. Gramley, 520 U.S. 899, 904 (1997);

10  McDaniel v. United States Dist. Court (Jones), 127 F.3d 886, 888 (9th Cir. 1997); Jones v. Wood,

11  114 F.3d 1002, 1009 (9th Cir. 1997); Rule 6(a) of the Rules Governing Section 2254.  Good cause

12  is shown "where specific allegations before the court show reason to believe that the petitioner

13  may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief."

14  Bracy v. Gramley, 520 U.S. at 908-09 (citing Harris v. Nelson, 394 U.S. 287 (1969).  Discovery

15  will not be allowed so that the petition can "explore [his] case in search of its existence," looking

16  for new constitutional claims.  See Rich v. Calderon, 187 F.3d 1064, 1067 (9th Cir. 1999).  If

17  good cause is shown, the extent and scope of discovery is within the court's discretion.  See

18  Habeas Rule 6(a).  The Court's duty in a habeas proceeding is to determine whether or not

19  petitioner's constitutional rights were violated in the course of the conviction.

20           Petitioner has failed to demonstrate good cause in support of his request for discovery.  In

21  fact, Petitioner has not set for any "cause" for the need to conduct discovery, and his request is

22  nothing more than a "fishing expedition" and must be denied.

23                               ORDER

24           Based on the foregoing, it is HEREBY ORDERED that:

25           1.     The petition for writ of habeas corpus is DENIED;

26           2.     The Clerk of Court is directed to enter judgment in favor of Respondent; and,

27           3.     The court declines to issue a Certificate of Appealability.  28 U.S.C. § 2253(c);

28                  Slack v. McDaniel, 529 U.S. 473, 484 (2000) (a COA should be granted where

                                       12

the applicant has made "a substantial showing of the denial of a constitutional right," i.e., when "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong"; <u>Hoffman v. Arave</u>, 455 F.3d 926, 943 (9th Cir. 2006) (same).  In the present case, the Court finds that reasonable jurists would not find it debatable that the state courts' decision denying Petitioner's direct appeal were "objectively unreasonable."

IT IS SO ORDERED.

**Dated:    February 12, 2008           _____/s/ Sandra M. Snyder_____**
UNITED STATES MAGISTRATE JUDGE